UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TOBY TERRY LAPOINTE,                                    Case No. 2:18-cv-81

          Plaintiff,                                     Hon. Robert J. Jonker
                                                       U.S. District Judge

     v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
_____/

## REPORT AND RECOMMENDATION

### Introduction

Plaintiff Toby Terry LaPointe was injured in the 1990s while conducting a training exercise as a U.S. Marine. LaPointe fell while rappelling from a helicopter. LaPointe states that he uses his wheelchair to limit walking and his complex back brace to limit movement and pain. LaPointe describes his pain as constant, sharp, and dull. (ECF No. 6-2, PageID.40.)

LaPointe was determined to be disabled by the Veterans Administration. (*Id.* at PageID.62.) After leaving the U.S. Marine Corps, LaPointe attended college for three years before accepting employment as an officer with the U.S. Customs and Border Protection. (*Id.* at PageID.66-67.) LaPointe retired due to his disability on September 20, 2014. (*Id.* at PageID.64.)

LaPointe filed an application for disability insurance benefits alleging that he became disabled on September 7, 2014. The Social Security Administration rejected

his claim and LaPointe requested a hearing. The Administrative Law Judge (ALJ) found that LaPointe could perform jobs that existed in significant numbers in the national economy given LaPointe's residual functional capacity ("RFC"), and therefore concluded that LaPointe was not disabled under the Social Security Act. The Appeals Council denied LaPointe's request for review.

On appeal, LaPointe argues that the ALJ (1) failed to consider Listing 11.08(B) regarding spinal cord disorders, and (2) failed to afford the proper weight to Dr. Kevin Lawson's opinion, in violation of the treating physician rule. Upon review of the record, I respectfully recommend that the Court affirm the decision of the ALJ and dismiss this case.

## Standard of Review

Review of an ALJ's decision is limited to two issues: (1) "whether the ALJ applied the correct legal standards," and (2) "whether the findings of the ALJ are supported by substantial evidence." *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); *see also* 42 U.S.C. § 405(g). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and the Commissioner's findings are conclusive provided they are supported by substantial evidence. 42 U.S.C. § 405(g).

Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole, and take into account whatever evidence in the record fairly detracts from its weight. *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984) (citations omitted). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).

## Procedural Posture

LaPointe applied for Social Security disability insurance benefits on September 7, 2014, the day he alleges he became disabled. (ECF No. 6-5, PageID.182-83.) LaPointe's application was initially denied, (ECF No. 6-4, PageID.127-30), and he subsequently requested an administrative hearing before an ALJ. (*Id.* at PageID.133-34). The ALJ held a hearing on February 27, 2017, at which time LaPointe was represented by counsel. (ECF No. 6-2, PageID.54-111.)

3

On October 3, 2017, the ALJ affirmed the Social Security Administration's initial denial of benefits. (*Id.* at PageID.35-45.) The ALJ's decision became the agency's final decision on April 25, 2018, when the Appeals Council denied LaPointe's request for review. (*Id.* at PageID.21-25.)  LaPointe then filed this appeal, seeking judicial review of the agency's final decision denying his request for disability benefits.

## Background

LaPointe was born on June 10, 1970.  (ECF No. 6-3, PageID.113.)  LaPointe has a high school education and attended college for three years. (ECF No. 6-6, PageID.201.)  LaPointe was employed as a U.S. Customs Officer until he retired due to his disability.  (*Id.* at PageID.254.)

During the 1990s, Lapointe was a U.S. Marine.  He was injured in a rappelling accident that occurred during a training exercise.  (ECF No. 6-2, PageID.73.) LaPointe broke two vertebrae and was medically discharged from the U.S. Marine Corps. (*Id.* at PageID.68.)

In 2008, LaPointe had kyphoplasty surgery to remove a blood clot in his spine. (*Id.* at PageID.73-74.)  An MRI on August 13, 2011, showed normal vertebral body height and alignment, and stable middle multilevel thoracic degenerative disease, with normal disc herniation.  (ECF No. 6-6, PageID.261.)  Post kyphoplasty surgery, he appeared stable with an ill-defined altered signal in the right aspect of the spinal canal at the T7 level consistent with a small amount of extruded cement.  (*Id.*)  The MRI showed degenerative loss of disc signal at L5-S1 and small broad-based central

disc herniation mildly effacing ventral epidural fat consistent with a prior study.  (*Id.* at PageID.263.)  At L4-5, the MRI revealed mild central canal stenosis and bilateral neural foraminal stenosis with small focal central disc herniation and a stable mildly effacing ventral thecal sac.  (*Id.*)

LaPointe had T5-T11 spinal fusion surgery on September 27, 2012.  (ECF No. 6-7, PageID.271.)  On November 12, 2012, LaPointe was prescribed an external bone growth stimulator.  (*Id.* at PageID.281.)

Dr. Kevin Lawson examined LaPointe on September 9, 2013, due to spine pain, neck stiffness, and soreness.  (ECF No. 6-8, PageID.514-516.)  LaPointe was still working at the time, but Dr. Lawson noted he would probably retire due to his medical condition.  (*Id.*)   LaPointe was taking hydromorphine and hydrocodone but was still experiencing frequent headaches.  (*Id.*)  LaPointe was able to walk with a normal gait.  (*Id.* at PageID.515.)

On October 29, 2013, Dr. Lawson noted that LaPointe had not returned to his normal job duties post-surgery, but was performing light duty desk work.  (*Id.* at PageID.517.)    LaPointe was taking Dilaudid and Norco for pain.  (*Id.*) LaPointe presented with mild lumbar degenerative disc disease with a stable thoracic fixation.  (*Id.* at PageID.517-518.)  Dr. Lawson noted that LaPointe had a normal gait on October 29, and December 9, 2013.  (*Id.* at PageID.518, 521.)  On December 9, 2013, LaPointe received a corticosteroid injection in his right shoulder.  (*Id.* at PageID.521-523.)

On January 27, 2014, Dr. Lawson noted that LaPointe was well coordinated with a normal gait and was walking normally during his office visit.  (*Id*. at PageID.524.)  On March 27, and May 29, 2014, Nurse Practitioner Carol B. Richwine noted that LaPointe presented with a normal gait but reportedly arose slowly from a sitting position.  (*Id*. at PageID.527, 529.)

LaPointe's examination was stable on July 14, 2014, but Dr. Lawson noted a broken screw in the thoracic hardware.  (*Id*. at PageID.531.)  On July 15, 2014, LaPointe stated that he "could hardly stand up" because of the intense pain and he was awaiting retirement paperwork from the federal government.  (*Id*. at PageID.533.)  Nurse Practitioner Richwine noted that LaPointe was prescribed Flexeril and Prednisone.  (*Id*. at PageID.535.)

Dr. Lawson examined LaPointe on September 22, 2014, and noted that the dorsal column stimulator trial helped with thoracic pain but not with all of his discomfort.  (ECF No. 6-6, PageID.239.)  Dr. Lawson reported that he observed LaPointe walk a modest distance with a normal gait.  (ECF No. 6-8, PageID.539.)  On October 15, 2014, LaPointe was examined by Nurse Practitioner Terry Malloy for left shoulder pain.  (ECF No. 6-9, PageID.985-987.)

Nurse Practitioner Richwine noted that, on January 27, 2015, LaPointe had a normal gait and was observed rising slowly from a sitting position to standing.  (ECF No. 6-8, PageID.689.)  LaPointe underwent surgery on February 10, 2015, to remove thoracic hardware and for placement of a neurostimulator device. (*Id*. at PageID.701, 711-714.)  LaPointe presented with pain over the incision area on February 25, 2015.

6

(ECF No. 6-9, PageID.753.)  Dr. Lawson instructed LaPointe to use a walker for two to three more weeks.  (*Id*.)  At his six-week post-operative examination on March 24, 2015, LaPointe reported fatigue and afternoon nausea.  (*Id*. at PageID.763.)  LaPointe reported that his right chest and shoulder pain was "hard to notice anymore."  (*Id*.)  LaPointe was instructed to start walking ten minutes twice per day and to increase by five minutes every three to four days.  (*Id*. at PageID.764.)

Dr. Lawson examined LaPointe on June 8, 2015.  (*Id*. at PageID.835-837.)  Dr. Lawson noted that LaPointe's gait was moderately slow and he was cautious rising from the chair.  (*Id*. at PageID.836.)  On that same date, Nurse Practitioner Colleen Burton wrote a letter indicating that LaPointe needed to use a wheelchair 75 percent of his day and the dorsal column stimulator did not help much with pain.  (*Id*. at PageID.978.)  LaPointe also used a motorized scooter.  (*Id*.)  LaPointe was limited in engaging in activities and he needed to change position frequently.  (*Id*.)  She further stated that LaPointe was unemployable and not able to work.  (*Id*.)

On June 24, 2015, Dr. Lawson completed a Residual Functional Capacity ("RFC") questionnaire.  (*Id*. at PageID.980-983.)  Dr. Lawson opined that LaPointe was likely to be off-task 70 percent of the time and was incapable of even low stress jobs due to constant pain.  (*Id*.)  Dr. Lawson opined further that LaPointe could walk one quarter of a block and sit for thirty minutes with a maximum of two hours of sitting during an eight-hour day and could stand for fifteen minutes for less than two hours per eight-hour day.  (*Id*.)

On December 14, 2015, Nurse Practitioner Malorie Crawford examined LaPointe. (*Id*. at PageID.995.) LaPointe indicated that he injured his back three days earlier while bending over and was now walking with the assistance of a cane. (*Id*.) LaPointe was prescribed steroids and a muscle relaxant. (*Id*. at PageID.996.) During a January 26, 2016, pre-operative examination for bariatric surgery, Dr. Timothy Tetziaff noted that LaPointe had a normal gait. (*Id*. at PageID.999.)

## ALJ's Decision

Generally, the ALJ must employ a five-step sequential analysis to determine whether the claimant is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520; *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). At step one, the ALJ determines whether the claimant can still perform substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant's impairments are considered "severe." 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairments meet or equal a listing in 20 C.F.R. part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). At step four, the ALJ determines whether the claimant has the residual functional capacity ("RFC") to still perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). At step five, after considering the claimant's RFC, age, education, and work experience, the ALJ determines whether a significant number of other jobs exist in the national economy that the claimant can perform. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines the claimant is not disabled under any step, the analysis ceases and the claimant is declared as not disabled. 20 C.F.R § 404.1520(a)(4).

8

The claimant has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

The ALJ found that LaPointe had not engaged in substantial gainful activity since Sept. 7, 2014. (ECF No. 6-2, PageID.37.) The ALJ then found that LaPointe had severe impairments: degenerative disc disease and major depressive disorder. (*Id.*) The ALJ determined that LaPointe did not meet a listed impairment or suffer with an impairment or combination of impairments that was equivalent in severity to a listed impairment. In making this conclusion, the ALJ considered LaPointe's depressive disorder under Listing 12.04. The ALJ also noted that no acceptable medical source set forth any findings that could meet the severity of any listing criteria. (*Id.* at PageID.38.)

The ALJ determined that LaPointe could no longer perform his past relevant work as a Customs Officer. In considering the medical record, the ALJ determined that LaPointe had the RFC to perform sedentary work with the following limitations:

> He can frequently reach overhead with his right upper extremity. He can handle items frequently with the left hand, and can handle items frequently with the right hand. He can finger items frequently with the left hand and with the right hand. The claimant can climb ramps and stairs occasionally. He can never climb ladders, ropes, or scaffolds. He can stoop frequently. The claimant can never kneel, never crouch nor never crawl. The claimant can never work at unprotected heights nor can he ever work around moving mechanical parts. He would not be

9

able to operate a motor vehicle in the workplace.  The claimant cannot
work in an environment that exposes him to extreme cold and/or
vibration.  With regard to understanding, remembering and carrying
out instructions, he can perform simple, routine tasks.  With regard to
the use of judgment in the workplace, he can make simple work-related
decisions.   The claimant is capable of frequent interaction with
supervisors and occasional interaction with coworkers and the general
public.  In addition to normal breaks, the claimant will be off task less
than 10 percent of time in an 8-hour workday.

(*Id.* at PageID.39.)

The ALJ found that despite LaPointe's allegations of disabling symptoms and

the need for a wheelchair, medical records showed that he presented with a normal

and steady gait, with full range of motion.  (*Id.* at PageID.40.)  Furthermore, the ALJ

concluded that the objective medical record did not support the severity of the alleged

pain or the claimed functional limitations.  (*Id.* at PageID.41.)  The ALJ pointed to

the fact that LaPointe placed Christmas lights on his tree in December of 2016,

without assistance, and performed household projects such as remodeling his master

bedroom and refinishing a cabinet.  (*Id.*)  LaPointe also reported that he made

modifications to his basement workshop.  (*Id.*)  LaPointe attended professional

football games, purchased a pontoon boat, took a cruise with his family, and

vacationed in Colorado, California, Wyoming, and Texas.  LaPointe also admitted

that he drove to Maine and back.  (*Id.* at PageID.42.)  In addition, LaPointe reported

that after his retirement, his mood had improved and he felt much better.  (*Id.*)

The ALJ afforded little weight to Dr. Kevin Lawson and Dr. Edward Brophy's

opinions.  Dr. Lawson indicated that due to mental impairments, LaPointe would be

off-task 70 percent of the time and was incapable of performing even low stress jobs.

In addition, due to his physical impairments, Dr. Lawson found that LaPointe could only perform less than light work. (*Id*. at PageID.42.) Dr. Brophy limited LaPointe to light work with postural and environmental limitations. (*Id*.) The ALJ found that these opinions were inconsistent with the medical evidence which supported a range of sedentary work with modifications. (*Id*.)

Similarly, the ALJ afforded little weight to Nurse Practitioner Colleen Burton's opinion that LaPointe uses a wheelchair 75 percent of the time. The ALJ found that Burton based that statement on LaPointe's subjective reports and noted that nurse practitioners are not acceptable medical sources under social security rules. (*Id*. at PageID.42.)

Next, relying on the testimony of the vocational expert at the hearing, the ALJ found that a person with the same age, education, work experience, and RFC as LaPointe would be able to perform jobs in significant numbers in the national economy, such as production inspector (12,000 jobs nationally), machine feeder (22,000 jobs nationally), and as a surveillance system monitor (7,000 jobs nationally).

## Discussion

Plaintiff raises two errors for this Court's review. Plaintiff argues that the ALJ (1) failed to consider Listing 11.08(B) regarding spinal cord disorders and (2) failed to afford the proper weight to Dr. Kevin Lawson's opinion, in violation of the treating physician rule. Plaintiff requests that the Court reverse or remand this matter to the Commissioner for further consideration.

### 1.  Medical Listing 11.08(B)

LaPointe claims that the ALJ erred at step three by failing to consider Listing 11.08(B).[1]  Under step three of the five-step sequential evaluation process, the ALJ determines whether the claimant "is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations," at which time the claimant would be found disabled without having to consider vocational factors. *Newsome v. Comm'r of Soc. Sec.*, 528 F. Supp. 2d 733, 738 (W.D. Mich. 2007) (citing *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 538 (6th Cir. 2007)). "Because satisfying the listings yields an automatic determination of disability . . . the evidentiary standards for a presumptive disability under the listings are more strenuous than for claims that proceed through the entire five-step evaluation." *Peterson v. Comm'r of Soc. Sec.,* 552 F. App'x. 533, 539 (6th Cir. 2014).

The ALJ should consider a medical listing if the record raises a substantial question as to whether the claimant could qualify as disabled under the listing. *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013) (citing *Abbot v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)).  It is the claimant's burden to establish

---

[1]    Dr. Edward Brophy,the state agency physician, concluded that LaPointe did not meet Listings 1.04 (disorders of the spine) and 11.14 (peripheral neuropathy) in his assessment.  (ECF No. 6-3, PageID.119-122.)  The findings required to meet Listing 11.14 are nearly identical to the criteria to meet Listing 11.08(B).  For instance, Listing 11.14 involves a "[d]isorganization of motor function in two extremities, resulting in extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities."  Therefore, the record contains opinion evidence that supports a finding that LaPointe did not meet all of the Listing 11.08(B) criteria.

that his impairments meet or equal a listing.  *Evans v. Sec'y of Health & Human Servs.,* 820 F.2d 161, 164 (6th Cir. 1987).  Where the ALJ makes findings elsewhere in the decision supporting the conclusion that the claimant did not meet a listing, the Court may affirm the decision because an ALJ need not "spell out every fact a second time." *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006).  The ALJ's step three findings may be upheld where there are "factual findings elsewhere in his decision to support his conclusion." *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014).  An impairment that meets only some of the criteria set forth in a listing does not satisfy the claimant's burden to demonstrate disability under that listing.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

To satisfy Listing 11.08(B) LaPointe must show:

(1) Disorganization of motor function in two extremities; which

(2) results in an extreme limitation[2] in the ability to either:

---

[2]    "Extreme limitation" is further defined as:

the inability to stand up from a seated position, maintain balance in a standing position and while walking, or use your upper extremities to independently initiate, sustain, and complete work-related activities. The assessment of motor function depends on the degree of interference with standing up; balancing while standing or walking; or using the upper extremities (including fingers, hands, arms, and shoulders).

a.  Inability to stand up from a seated position means that once seated you are unable to stand and maintain an upright position without the assistance of another person or the use of an assistive device, such as a walker, two crutches, or two canes.

b.  Inability to maintain balance in a standing position means that you are unable to maintain an upright position while standing or walking

13

- stand up from a seated position,

- balance while standing or walking, or

- use the upper extremities persisting for 3 consecutive months after the disorder.

20 C.F.R. Part 404, Subpart P. App'x 1.

In the opinion of the undersigned, LaPointe has failed to set forth medical evidence that could establish that he meets this listing. Further, LaPointe fails to explain how he believes he meets this listing. The ALJ addressed LaPointe's ability to stand up from a seated position and to walk with a normal gait. Further, the ALJ noted that LaPointe engaged in activities such as hanging Christmas lights, remodeling his home, vacationing, and boating which tend to refute LaPointe's claim that he could meet this listing.

Although, the ALJ did not expressly consider Listing 11.08(B), he explained factors that establish that LaPointe cannot meet the criteria of Listing 11.08(B):

---

without the assistance of another person or an assistive device, such as a walker, two crutches, or two canes.

c. Inability to use your upper extremities means that you have a loss of function of both upper extremities (including fingers, wrists, hands, arms, and shoulders) that very seriously limits your ability to independently initiate, sustain, and complete work-related activities involving fine and gross motor movements. Inability to perform fine and gross motor movements could include not being able to pinch, manipulate, and use your fingers; or not being able to use your hands, arms, and shoulders to perform gross motor movements, such as handling, gripping, grasping, holding, turning, and reaching; or not being able to engage in exertional movements such a lifting, carrying, pushing, and pulling.

20 C.F.R. Part 404, Subpart P. App'x 1, 11.00(D)(2).

The medical evidence of record reveals . . . that despite the claimant's allegations of disabling physical symptoms and the need for a wheelchair, the claimant has generally presented with normal and steady gait (Exhibits 8F/27; lSF/17, 26; 19F/7, 10, 16). He also had full range of motion of the extremities and equal hand grasps (Exhibit lSF/26).

* * * * *

Recently, the claimant was noted to report that he used a cane due to difficulty with ambulation. On exam, he had full range of motion of the cervical spine, no increase in neck or arm or leg symptoms, and no radiation to the upper or lower extremities. Motor strength testing showed that despite pain, he was able to perform 5/5 deltoid, biceps, triceps, wrist extension, wrist flexion, grip and intrinsics. He also had grossly intact sensation (Exhibit 27F/4). While the claimant had increased thoracic kyphosis leading to a forward hunched posture, he generally had good strength. Finally, he was able to forward flex and touch his shin with some difficulty returning to standing. It was noted that the claimant had diffuse thoracic and lumbar spine pain of unclear etiology (Exhibit 27F/5).

* * * * *

For example, in December of 2016, the claimant noted that he was happy that he was able to put the Christmas lights up on his house without any assistance.  The claimant also reported performing various other household projects including remodeling his master bedroom and refinishing a cabinet.  He also noted that he made some modifications to his basement workshop, so he could perform the work without too much physical exertion or strain on his body.  Additionally, he reported attending a Detroit Lions professional football game (Exhibit 20F/66, 106, 165, 177).  The record also shows that the claimant noted that "immediately after his retirement his mood had improved and he had been feeling and doing quite well.  He stated he was able to take a cruise with his family over the holidays and it was enjoyable" (Exhibit lSF/10).  Moreover, the claimant bought a pontoon boat and was able to go boating on the weekends and enjoyed it (Exhibit 20F/191).  The record also shows multiple vacations/trips during the relevant adjudicative period to Colorado, California, Wyoming, and Texas - where he was often noted to drive.  Particularly, the claimant admitted to driving to Maine and back.

(ECF No. 6-2, PageID.40-42.)

In the opinion of the undersigned, the ALJ set forth substantial evidence that supports a finding that LaPointe could not meet Listing 11.08(B). The ALJ pointed to specific pieces of evidence in the medical record that demonstrate that LaPointe could stand from a seated position and walk with a normal gait. The ALJ noted that Plaintiff was not extremely limited in using his upper extremities. LaPointe has failed to explain either how he meets Listing 11.08(B) or point to specific medical evidence in the record to support his claim that he meets the listing. In addition, the ALJ described several of LaPointe's activities that tend to disprove that he has an "extreme limitation" as defined in Listing 11.08(B).

Because the medical evidence does not raise a substantial question regarding whether LaPointe could meet Listing 11.08(B), the ALJ was not required to specifically address Listing 11.08(B). Further, the ALJ set forth substantial evidence in the record to support the conclusion that LaPointe cannot meet the criteria in Listing 11.08(B). In the opinion of the undersigned, the ALJ did not err by failing to reference Listing 11.08(B) in his decision.

## 2. Treating Physician Rule

LaPointe argues that the ALJ erred by giving only limited weight to Dr. Lawson's opinion. The ALJ gave limited weight to Dr. Lawson's opinion that LaPointe would be off task 70 percent of the time and was incapable of performing even low stress jobs due to his mental impairments and that he could perform less than light work due to his physical impairments. (ECF No. 6-2, PageID.42). The ALJ,

16

in contrast, found that the record demonstrated that LaPointe could do sedentary work with a number of limitations. (*Id.*)

Generally, a treating physician's medical opinion is entitled to great weight when evaluating a patient's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). The ALJ must give controlling weight to a treating physician's medical opinion when (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). If an ALJ affords less than controlling weight to a treating source's opinion, the ALJ must provide "good reasons" for discounting the opinion. *Id.* at 376. The reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*

Here, Dr. Lawson filled out a Residual Functional Capacity Questionnaire on June 24, 2015. (ECF No. 6-9, PageID.979-983). Dr. Lawson noted that he had seen LaPointe monthly since April of 2008. Dr. Lawson checked boxes to indicate that LaPointe suffers with depression, would be off task 70 percent of the day, and is incapable of even "low stress" jobs. (*Id.* at PageID.981.) In the box that asks for an explanation, Dr. Lawson wrote "patient is in constant pain." (*Id.*) Dr. Lawson noted that LaPointe could walk one quarter of a block, sit for thirty minutes, and stand for fifteen minutes. (*Id.*) Dr. Lawson noted that, during an eight-hour work day,

LaPointe could stand or walk less than two hours and sit for about two hours, with periods of walking every twenty minutes during a work day for a ten to fourteen minute period of time.  (*Id*. at PageID.982.)  Dr. Lawson indicated that LaPointe needed breaks every twenty to thirty minutes and required fifteen to twenty minutes of rest before returning to work.  (*Id*.)  In addition, Dr. Lawson stated that LaPointe used an assistive device such as a cane, could rarely lift ten pounds, and occasionally lift less than ten pounds.  Dr. Lawson noted, that LaPointe had some limitations with handling and fingering, that LaPointe had good and bad days, and that he was likely to miss work more than four days per month.  (*Id*. at PageID.983.)

Dr. Lawson filled out a form that consisted primarily of checking boxes without providing supporting medical statements for the conclusions.  An ALJ is not bound by conclusory statements of doctors, particularly where they appear on "check-box forms" without explanations citing detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Hernandez v. Commr*, No. 1:14-cv-958, 2015 WL 3513863, at * 5 (W.D. Mich. June 4, 2015).  "Form reports in which a doctor's obligation is only to check a box, without explanations of the doctor's medical conclusions are weak evidence at best."  *Smith v. Commr*, No. 13-cv-12759, 2015 WL 899207, at * 14 (E.D. Mich. Mar. 3, 2015); *see also Ashley v. Commr*, No. 1:12-cv-1287, 2014 WL 1052357, at * 8 n.6 (W.D. Mich. Mar. 19, 2014) ("Courts have increasingly questioned the evidentiary value of 'multiple choice' or 'check-off' opinion forms by treating physicians[.]").

18

More importantly, the ALJ set forth good reasons from the record that explained the inconsistencies in Dr. Lawson's conclusions.  The ALJ determined that Dr. Lawson's opinions were inconsistent with (1) LaPointe's own testimony at the hearing and (2) the medical record which included Dr. Lawson's examinations and notations made during those examinations.

As state above, the ALJ provided a detailed explanation of the evidence supporting his RFC finding.  (ECF No. 6-2, PageID.39-42.)  The ALJ noted that LaPointe was able to drive twice per month and used a wheelchair to limit movement and a complex back brace for support.  (*Id*. at PageID.40.) The medical record showed that LaPointe had a normal and steady gait with a full range of motion in his extremities.  (*Id*.)  LaPointe had some success with a dorsal column stimulator to limit pain.  (*Id*.)  After LaPointe had surgery in February of 2015, to remove thoracic spine hardware, he reported that he was doing much better.  (*Id*.)  While he had difficulty getting comfortable and felt weak, he had normal sensation in his extremities and his gait was slower.  (*Id*.)  He was further instructed to begin walking 10 minutes per day and to increase his walking.  (*Id*.)  He was instructed to lift no more than 5 to 10 pounds while recovering from his surgery.  (*Id*.)

The ALJ noted that LaPointe injured his back in December of 2015 after bending down.  He was walking with a cane.  (*Id*.)  During a recent exam, he had full range of motion of the cervical spine, no increase in neck, arm, or leg symptoms and good motor strength.  (*Id*. at PageID.41.)  In addition, the ALJ noted that LaPointe

engaged in numerous activities that included remodeling his house, boating, and vacationing.  (*Id*. at PageID.41-42.)

As to LaPointe's mental health, LaPointe noted that he had some depression due to his back pain and the limitations he experiences due to his back condition.  (*Id*. at PageID.40.)  The ALJ found that LaPointe had moderate limitations in interacting with others and mild limitations in his mood and ability to manage himself.  LaPointe was able to care for his personal hygiene and to care for pets. (*Id*. at PageID.38.)  In addition, LaPointe responded well to medication and attended therapy sessions consistently.  (*Id*. at PageID.41.)  The ALJ fully considered LaPointe's mental health condition in assessing LaPointe's RFC.

In the opinion, of the undersigned, the ALJ set forth good reasons to assign limited weight to Dr. Lawson's RFC opinion based upon the totality of the evidence in record and from the hearing.

## Recommendation

The Court is sympathetic toward LaPointe and recognizes that he suffered a serious and painful injury, had multiple surgeries, and may never fully recover from his back injury.  A review of the record, however, indicated that the ALJ conducted a procedurally correct review of the Social Security Administration's denial of LaPointe's disability claim.  The ALJ's findings considered the medical record that included Dr. Lawson's records.  The medical records provide substantial evidence that LaPointe did not satisfy the criteria of Listing 11.08(B) and for giving limited weight to Dr. Lawson's RFC Questionnaire answers.

For these reasons, I respectfully recommend that the Commissioner's decision be affirmed and that the Court dismiss this case.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).   Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


Dated:   July 2, 2019                                    /s/ *Maarten Vermaat*
                                                        Maarten Vermaat
                                                        U. S. MAGISTRATE JUDGE